UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MARINE WATCHMEN INC.,

                    Plaintiff,                    **REPORT AND RECOMMENDATION**
                                                                 20 CV 851 (FB)(LB)

    -against-

VENTURE CRUISE, LLC, *in personam*,
CHRISTOPHER SPERRY, *in personam*,
P.M. ROYAL, LLC, *in personam*, PAUL
DEMO, *in personam* and the following
documented vessel, with its bunkers,
engines, machinery, equipment, fixtures,
appurtenances, etc., *in rem*, 1988 PALAT
a/k/a RACONTEUR a/k/a ARIEL,

                    Defendants.
---------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff brings this action pursuant to the Ship Mortgage Act, 46 U.S.C. § 31301 et. seq., to extinguish two mortgages entered against a U.S. flagged vessel, 1988 Palat a/k/a Raconteur a/ka/ Ariel (the "Vessel").[1] ECF No. 1 ("Compl."), ¶ 8. Despite service of the summons and complaint, ECF Nos. 6-8, defendants have failed to plead or otherwise defend this action.[2] The Clerk of Court noted entry of defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 10.[3] Plaintiff now moves for a default judgment. ECF Nos. 11-12. The Honorable Frederic Block referred plaintiff's motion to me to hold an inquest and to issue a Report

---

[1] The complaint states that plaintiff seeks not only to quiet title to the Vessel but also a maritime lien for necessaries and damages in the amount of $401,373.00. Compl. ¶ 45. However, plaintiff's motion papers state that it is "withdrawing its request for a maritime lien for necessaries on the subject Vessel against all defendants" because it has obtained a state court judgment against defendants for its services. ECF No. 12 ("Pl.'s Mot.") 5.
[2] The docket reflects service upon all in personam defendants except Paul Demo. See ECF Nos. 6-8.
[3] The Court notes that of the three Certificates of Default issued, only the certificate naming defendant P.M. Royal, LLC is signed by the Clerk of Court. ECF No. 10, at 2. Nonetheless, the Court takes notice that plaintiff's affidavit, ECF No. 9-1, supports a finding that defendants Venture Cruise, LLC and Christopher Sperry have failed to plead or otherwise defend this action.

1

and Recommendation in accordance with 28 U.S.C. § 636(b).[4] I respectfully recommend that plaintiff's motion for a default judgment should be denied without prejudice.

## BACKGROUND[5]

Plaintiff Marine Watchmen Inc., a New York corporation, operates a marina located in Brooklyn, New York. Compl. ¶¶ 1, 7. On or about January 1, 2009, defendant Venture Cruise LLC ("Venture"), through its owners, defendants Christopher Sperry and Paul Demo, entered into an agreement with plaintiff to dock the Vessel at plaintiff's marina. Id. ¶¶ 14, 32. At that time, defendant Venture held title to the Vessel. Id. ¶ 16. Pursuant to its agreement with defendant Venture, plaintiff "performed necessaries, services, repair and maintenance and stored" the Vessel between January 1, 2009 and February 28, 2018. Id. ¶ 33. Defendant Venture then abandoned the Vessel at plaintiff's marina and failed to pay storage and maintenance fees totaling $266,471.56. Id. ¶¶ 34-35. Venture's breach of its agreement with plaintiff resulted in a maritime lien for necessaries totaling $401,373.00, a figure comprised of the outstanding $266,471.56, plus costs, fees, and interest. Id. ¶ 38 (citing 46 U.S.C. §§ 31341-31342). On March 7, 2012, plaintiff filed a breach of contract action in Supreme Court, Kings County, against defendant Venture Cruise to recover the fees owed and on August 15, 2017, plaintiff obtained a default judgment in the amount of $299,469.30 plus costs and interest. Id. ¶¶ 39, 41, Ex. G. The judgment was then foreclosed as a garagemen's lien totaling $401,373.00. Id. ¶ 42. On November 24, 2017, plaintiff purchased the Vessel for $350 at the foreclosure sale. Id. ¶ 43.

---

[4] This matter was originally referred to Magistrate Judge James Orenstein to hold an inquest and issue a Report and Recommendation.

[5] The facts are drawn from the uncontested allegations in plaintiff's complaint, as well as documents incorporated by reference, and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc., v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for default judgment).

2

After purchasing the Vessel, plaintiff was issued New York State title and the title was filed with the United States Coast Guard's National Vessel Documentation Center. Id. ¶¶ 24-25. When plaintiff attempted to register the Vessel with the Coast Guard for use in restricted trades, registration was hindered because of two preferred mortgages recorded against the Vessel. Id. ¶¶ 26-27. Plaintiff alleges that the mortgages were filed against the Vessel on May 23, 2000 by defendant P.M. Royal, LLC ("Royal") with the permission of defendant Venture to secure two loans in the amounts of $40,300 and $50,000 respectively. Id. ¶¶ 17-18. According to plaintiff, the loans are fictitious, and the mortgages were fraudulently placed on the Vessel. Id. ¶ 18. Plaintiff believes that the loans and mortgages are illegitimate because defendants Royal and Venture are both wholly owned by defendants Demo and Sperry and are just "alter egos" of each other. Id. ¶ 19. Further, plaintiff alleges that money was never exchanged between Royal and Venture in consideration of the mortgages and they were only recorded to "defeat future maritime lienholders and owners." Id. ¶¶ 20-22. Royal, originally organized as a limited liability company under the laws of Missouri, was administratively cancelled by the Missouri Secretary of State on May 4, 2019. Id. ¶ 4, Ex. A. The mortgages, in plaintiff's view, are now stale because in the 20 years since the mortgages were recorded, Royal never took action to enforce them even though payment was never provided. Id. ¶ 28. Plaintiff asserts that the mortgages should be "extinguished pursuant to the doctrine of laches." Id.

**PROCEDURAL HISTORY**

Plaintiff commenced this case on February 17, 2020. ECF No. 1. The action is brought in personam against defendants Venture, Royal, Sperry, and Demo, and in rem against the Vessel. Id. Summonses were issued against all defendants and plaintiff has filed affidavits attesting to

service of process on defendants Venture, Royal, and Sperry. ECF Nos. 5-8. On August 7, 2020, after the defendants failed to plead or otherwise defend the action, the Court ordered plaintiff to file a request for a certificate of default. See Electronic Order dated August 7, 2020. The Clerk of Court noted the default of defendants Venture, Royal, and Sperry on August 20, 2020. ECF No. 10. Plaintiff now moves for a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).[6] ECF Nos. 11-12. Plaintiff's motion consists of its counsel's affirmation in support, ECF No. 11-1 ("Riso Aff."), the complaint and accompanying exhibits, ECF No. 11-2, affidavits of service, ECF No. 11-3, certificates of default, ECF No. 11-4, the docket entry noting default, ECF No. 11-5, a proposed order, ECF No. 6, and a Memorandum of Law, ECF No. 12 ("Pl's Mot."). The Memorandum of Law withdraws plaintiff's request for a maritime lien of necessaries against the defendants in light of plaintiff's state court judgment. Pl.'s Mot. 5.

## DISCUSSION

### I. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

---

[6] Plaintiff initially moved for a default judgment on September 9, 2020, ECF No. 11, but failed to include a Memorandum of Law with its papers in violation of Local Civil Rule 7.1. The Court ordered plaintiff to submit a Memorandum of Law and plaintiff complied. ECF No. 12.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." <u>Finkel v. Universal Elec. Corp.</u>, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing <u>Erwin DeMarino Trucking Co. v. Jackson</u>, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.</u>, 109 F.3d 105, 108 (2d Cir. 1997). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." <u>Rolls-Royce PLC v. Rolls-Royce USA, Inc.</u>, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." <u>Id.</u> (internal quotation marks and citation omitted). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. <u>Credit Lyonnais Secs. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999) (citing <u>Transatlantic Marine Claims Agency, Inc.</u>, 109 F.3d at 111). Here, because plaintiff has withdrawn its request for a lien for necessaries and damages, the Court finds an inquest unnecessary.

**II. Liability**

The Court would be remiss were it not to draw attention to the curious posture of these proceedings and the unique circumstances in the instant matter. As explained above, plaintiff brought a breach of contract action in New York state court against defendant Venture to recover amounts owed for the provision of necessaries to the Vessel. Compl. ¶¶ 39-41. Under federal law, this provision of necessaries entitled plaintiff to a maritime lien on the Vessel and to bring an in rem action in this Court to enforce that lien. See 46 U.S.C § 31342(a) ("A person providing necessaries to a vessel…has a maritime lien on the vessel [and] may bring a civil action in rem to enforce the lien."). Had plaintiff initially brought its action against the Vessel in rem in this Court, seeking to enforce its maritime lien under the Ship Mortgage Act, this Court could have ordered foreclosure and provided title that was free and clear of all other liens and mortgages. See id. § 31326(a) (providing that sale of a vessel by a district court in a civil action in rem to enforce a lien extinguishes all prior claims against the vessel); see also The Moses Taylor, 71 U.S. 411, 427 (1866) ("It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world."); Goldfish Shipping, S.A. v. HSH Nordbank AG, 377 Fed. Appx. 150, 153 (3d Cir. 2010) (summary order) (citing Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S., 10 F.3d 1015, 1022 (3d Cir. 1993)) (discussing the intention of the Ship Mortgage Act to allow an admiralty court to foreclose on a ship and then give good title to the new owner); Seaborn Marina, Inc. v. M/V Priorities, No. 11-CV-1591(DRH)(ARL), 2017 WL 1133288, at *3 (E.D.N.Y. Feb. 21, 2017) (noting that the district court ordered the sale of a vessel "free and clear" of all prior incumbrances in a case involving a lien for necessaries) Report and Recommendation adopted by 2017 WL 1131903 (E.D.N.Y. Mar. 24, 2017).

However, plaintiff did not pursue that course and instead obtained a money judgment and foreclosed on the Vessel in state court proceedings under the New York Lien Law.[7] Compl. ¶ 39-43. As a result, plaintiff brings this action only to clear title to the Vessel, relief that would have been afforded under the Ship Mortgage Act.[8] Plaintiff seeks what in effect amounts to a declaratory judgment barring future efforts to foreclose on the two preferred mortgages at issue. Specifically, plaintiff believes the mortgages should be extinguished because they are fraudulent and barred by laches.[9] Pl.'s Mot. 4-5. Plaintiff's motion papers provide little support for the relief sought.[10] The Court has therefore searched for appropriate authority to adjudicate plaintiff's request.

Plaintiff's failure to initially bring this case in this Court was its first misstep. As discussed in greater detail below, plaintiff has failed to demonstrate compliance with the rules of procedure governing this admiralty action. Plaintiff has not obtained the arrest of the Vessel as required by the Supplemental Rules for Admiralty or Maritime Claims or published notice of its motion for default judgment as required by the Local Admiralty and Maritime Rules. Although not required for <u>in rem</u> admiralty jurisdiction, plaintiff also failed to properly serve defendant Royal as required by the Federal Rules of Civil Procedure and New York law.[11]

---

[7] Plaintiff purchased the Vessel for $350 in the foreclosure sale, far less than the amount it is owed by defendant Venture. Compl. ¶ 44.

[8] Other Courts have examined whether state lien laws are pre-empted by federal maritime law. <u>See</u> <u>Nat'l Liability and Fire Ins. Co. v. Rick's Marine Corp.</u>, 268 F. Supp. 3d 371, 379-80 (E.D.N.Y. 2017) (acknowledging but declining to address the issue); <u>Midlantic Nat. Bank v Sheldon</u>, 751 F. Supp. 26, 28 (E.D.N.Y. 1990) (finding that the Court's admiralty jurisdiction and federal maritime law pre-empt the New York Lien Law).

[9] Plaintiff also directs the court to 46 U.S.C. § 31330(a) which provides for criminal and civil penalties for incurring contractual obligations in violation of § 31323. Pl.'s Mot. at 5. However, nothing in this section discusses the remedy which plaintiff seeks from this Court.

[10] Plaintiff's Memorandum of Law is captioned as "Memorandum of Law in Support of Motion for Summary Judgment." Pl's Mot. 1. However, the motion requests the entry of a default judgment.

[11] The record also does not reflect service of the summons and complaint on defendant Paul Demo.

**A. This Court's Admiralty Jurisdiction**

Plaintiff asserts that the Court properly has jurisdiction over this matter because the Vessel is in the Eastern District of New York. Compl. ¶ 10. Plaintiff acknowledges the requirement that in admiralty cases brought in rem, the Court must generally issue a warrant of arrest for a Vessel before jurisdiction fully vests. Id. ¶ 11. However, plaintiff claims that "[u]pon information and belief, in this matter the Vessel need not be arrested…as Plaintiff is the titled owner in possession and as such shall maintain the Vessel in the Eastern District of New York." Id. ¶ 12. Plaintiff provides no legal authority for its assertion that the Vessel need not be arrested as its presence in the Eastern District of New York combined with plaintiff's title ownership is sufficient to permit this Court to exercise jurisdiction over this matter.

An in rem suit against a vessel is "distinctively an admiralty proceeding" and an area in which federal courts have exclusive jurisdiction. In re Millennium Seacarriers, Inc., 419 F.3d 83, 92-93 (2d Cir. 2005) [hereinafter "Millennium"] (Sotomayor, J.) (internal quotation marks omitted) (quoting Am. Dredging Co. v. Miller, 510 U.S. 443, 447 (1994)). See also 28 U.S.C. § 1333(1) (providing for the exclusive jurisdiction of the district courts in civil admiralty or maritime cases). In such cases, it is the vessel itself which is treated as the defendant and subject to the Court's coercive power. The Moses Taylor, 71 U.S. at 427 ("[T]he vessel…is itself impleaded as the defendant and is judged and sentenced accordingly."); Millennium, 419 F.3d at 93 (quoting Madruga v. Super. Ct. of State of Cal., County of San Diego, 346 U.S. 556 (1954)). "[O]nly a federal admiralty court acting in rem has the jurisdiction to quiet title to a vessel conclusively by extinguishing its maritime liens." Millennium, 419 F.3d at 93 (citing Moran v. Sturges, 154 U.S. 256, 282 (1894)). Generally, when an action is brought in rem against a vessel,

the Court's subject matter jurisdiction over the vessel is not established until the vessel is arrested within the Court's jurisdiction. Id. at 94 (citing FED. R. CIV. P. SUPP. R. C(2), D))

The Federal Rules of Civil Procedure Supplemental Rules for Admiralty and Maritime Claims require that when an action is brought in rem against a vessel, the vessel must be arrested in the district before the action may proceed. Leopard Marine & Trading, Ltd. v. Easy Street Ltd., 896 F.3d 174, 182 (2d Cir. 2018) [hereinafter Leopard Marine] (citing FED. R. CIV. P. SUPP. ADM. R. C(3)(a)(i)). This arrest requirement is premised upon the notion that the Court's jurisdiction in the matter does not fully vest until arrest occurs. Id. (quoting Millenium, 419 F.3d at 94); see also Dluhos v. The Floating and Abandoned Vessel, Known as "New York", 162 F.3d 63, 68 (2d Cir. 1998) (quoting FED. R. CIV. P. SUPP. R. D) ("[A] warrant of arrest of the vessel must issue for the trial court to establish jurisdiction over the res."). However, the Second Circuit recognizes that, in some unique instances, attachment or arrest of a vessel and its presence in the jurisdiction is unnecessary for the Court to exercise its admiralty jurisdiction. Leopard Marine, 896 F.3d at 183 (quoting Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC, 814 F.3d 146, 153-54 (2d Cir. 2016) [hereinafter Hapag-Lloyd]).

The case of Leopard Marine & Trading, Ltd v. Easy Street Ltd., is relevant here. There, the Second Circuit examined the validity of a maritime lien asserted by a fuel supplier against plaintiff's vessel. 896 F.3d at 178-80. After the fuel supplier arrested plaintiff's vessel in Panama, plaintiff instituted an action in the Southern District of New York seeking a declaratory judgment that enforcement of the lien was barred by laches. Id. at 180. Although not discussed by the Court, the complaint filed with the district court asserted personal jurisdiction over the defendant fuel supplier on the basis that, in the maritime contract at issue, the parties had agreed to submit to the jurisdiction of New York courts. Compl. ¶ 4, ECF 1 in Leopard Marine, No. 15-

9

Civ-3064(JSR) (S.D.N.Y. 2015). The district court found that the lien was barred by laches and the fuel supplier appealed. Id. at 181. On appeal, the Circuit first considered the issue of jurisdiction and explained that in actions in which declaratory relief is sought, a Court must realign the parties and examine whether jurisdiction would exist in a suit brought by defendant to enforce the claim at issue. Id. (quoting Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 67 (2d Cir. 2012)). This analysis required the Court to ask whether jurisdiction would exist over a case brought by the fuel supplier to enforce its claimed maritime lien. Id. at 182. The Court explained that to answer that question, it would have to resolve the issue of the vessel's absence from the district at the time the suit was brought. Id. Ultimately, the Court held that an action may still be brought seeking a declaratory judgment and characterized the Court's jurisdiction as "*not* in rem, but *derivative* of theoretically-possible jurisdiction in rem." Id. at 188 (emphasis in original). The Court reasoned that the suit was still permissible because the owner of the vessel could waive the requirement that the vessel be present in the district. Id. The Second Circuit labeled the remedy it announced as "in personam adjudication of rights in a maritime lien." Id. at 189. The Court also remarked that: "This case is admittedly unusual. Plaintiff comes to court seeking a declaration in personam. But the suit, if filed as a non-declaratory action by defendant, would likely be brought in rem." Id. at 193.

   The decision in Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC is also instructive here. In that case, the Circuit confronted an interpleader suit brought by an owner of several vessels seeking to adjudicate which of multiple claimants was entitled to the proceeds of a maritime fuel contract. Hapag-Lloyd, 814 F.3d at 150-51. One claimant, the company that actually delivered the fuel to the owner's vessels, claimed a maritime lien against the vessels until it received payment. Id. at 149. Another claimant, the party that contracted to supply the

10

fuel to the vessels, claimed a contractual right to payment for the fuel. Id. at 149. Although the Court was tasked with resolving the propriety of a maritime lien, the vessels were not present in the jurisdiction and had not been arrested. Id. at 153. This presented the question of whether the Court could properly exercise jurisdiction over the dispute. Id. The Court resolved the issue by highlighting the fact that the vessels' owner had initiated the interpleader action, finding that this consent of the owner constituted a waiver of the requirement to arrest the vessels and the requirement of the vessels' presence in the jurisdiction. Id. at 153-54.

At first glance, the Circuit's reasoning in those cases suggests that plaintiff's failure to effectuate the Vessel's arrest here may not be fatal to this Court's jurisdiction. Afterall, one of the major impediments the Circuit confronted – the vessel's absence from the jurisdiction – is not present here because the Vessel is actually located in the Eastern District of New York. Compl. ¶ 12. However, the facts of the instant matter are sufficiently different from Leopard Marine and Hapag-Lloyd to require a different result. Here, only plaintiff has appeared and the Court is being asked to enter a default judgment.

In Leopard Marine, even though the vessel was absent from the jurisdiction – making arrest within the jurisdiction impossible – plaintiff and defendant were present, had actively litigated the case, and the Court had personal jurisdiction over the parties. The Court characterized the actions as an "in personam adjudication of rights in a maritime lien," something the Circuit characterized as "admittedly unusual." Leopard Marine, 896 F.3d at 189, 193. Here, an in personam adjudication of rights in the two liens at issue is not possible. Defendant Royal has not consented to adjudication of its rights in the mortgage liens in this district. Plaintiff has also failed to properly serve defendant Royal under the Federal Rules of Civil Procedure which permit service of process by following state law procedures. FED. R. CIV.

11

P. 4(h)(1)(A), 4(e)(1). Plaintiff previously filed proof of service on defendant Royal which states that the summons and complaint were served upon the New York Secretary of State pursuant to New York Limited Liability Company Law § 304 which provides for service of process on an unauthorized foreign limited liability company. ECF No. 7. However, that statute also states that for service to be sufficient, it must be personally delivered to the foreign limited liability company in compliance with the laws of the foreign jurisdiction or sent to the foreign company by registered mail. See LTD. LIAB. CO. LAW § 304(c); see also Global Liberty Ins. Co. v. Surgery Ctr. Of Oradell, LLC, 153 A.D.3d 606, 606-07 (2d Dept. 2017) (detailing the procedure which must be followed for service to be sufficient). The record is silent as to plaintiff's efforts to comply with these requirements of the statute. Accordingly, this Court cannot engage in an in personam adjudication of defendant Royal's liens.

Unlike the present case, Hapag-Lloyd was an interpleader action in which the Court recognized that the in rem adjudication of maritime lien rights was "interconnected" and "inextricably intertwined" with another claimant's contract claim. 814 F.3d at 152-53. There, the Court viewed the vessels' owner's participation in the litigation as consent to jurisdiction, abrogating the need for the formal arrest of the vessel. Id. at 153. Hapag-Lloyd presented what the Circuit called a "litigation frenzy" in which the vessels' owner and a lien claimant both actively litigated to vindicate their interests. See id. at 149. This case is far afield from that interpleader action. Plaintiff here seeks to both bring this action, as plaintiff, and then in effect consent to the Court's jurisdiction on behalf of the Vessel to obtain the declaratory relief it seeks. "Understandably, [this Court] is uneasy to act without [proper] notice to the defendants." Id.

As will be discussed below, even if arrest were not necessary in this case, defendant's failure to comply with the notice requirements of the Local Admiralty and Maritime Rules would

still prevent the Court from granting plaintiff's instant request for a default judgment. As plaintiff acknowledges in its complaint "a District Court must generally issue a warrant of arrest of a Vessel and a Vessel must be arrested in order to establish jurisdiction to enter an in-rem decree…." Compl. ¶ 11. To avoid serious jurisdictional concerns, the Court should deny plaintiff's motion without prejudice and direct that plaintiff must effect the Vessel's arrest before refiling any new motion seeking a default judgment.

**B. The Doctrine of Laches**

Although the motion for a default judgment should be denied for failure to arrest the Vessel, in the interest of thoroughness the Court will discuss plaintiff's claim of laches. Plaintiff asserts that the Vessel is encumbered by two "maritime preferred mortgages/liens" held by defendant Royal and filed with the United States Coast Guard, compl. ¶¶ 8, 18, but that the mortgages "should be vacated, released and extinguished pursuant to the doctrine of laches" id. ¶ 28. In support of its position, plaintiff points to what it views as the fraudulent nature of the mortgages and defendant Royal's failure to enforce the mortgage over a 20-year period. Pl.'s Mot. 4.

The Ship Mortgage Act is clear that this Court has jurisdiction over a maritime action which seeks to declare that a lien is invalid. 46 U.S.C. § 31343(c)(2). The Act provides that:

> The district courts of the United States shall have jurisdiction over a civil action in Admiralty to declare that a vessel is not subject to a lien…[and] that Venue in such action shall be in the district where the vessel is found or where the claimant resides or where the notice of lien is recorded.

Id.  Although the Act specifies the procedure for enforcing outstanding preferred mortgages and foreclosing on other maritime liens, see id. §§ 31325(b)-(c), 31326, 31342(a), it is silent regarding the actual procedure to be used by an owner to declare a lien invalid.

13

"A court of admiralty, while not a court of equity, is governed by equitable principles." The Red Lion, 22 F.2d 329, 331 (E.D.N.Y. 1927). In equity, the defense of laches is ordinarily employed to bar a claim on the basis that the plaintiff engaged in unreasonable and inexcusable delay which prejudiced the defendant. Leopard Marine, 896 F.3d at 193 (quoting Ikelionwu v. United States, 150 F.3d 233, 237 (2d Cir. 1998)). In admiralty, "laches or delay in the judicial enforcement of maritime liens will, under proper circumstances, constitute a valid defence (sic)." The Key City, 81 U.S. 653, 660 (1871). Whether laches is properly employed in a particular case is a question of fact. Leopard Marine, 896 F.3d at 193-94 (quoting 8-VII Benedict on Admiralty § 7.01 (7th ed. 2017)). Courts confronting the issue examine whether a lien holder was diligent in enforcing a lien and arresting a vessel. Id. at 196. Although whether laches bars a claim is not governed by any statute of limitations, admiralty courts are guided to an extent by local limitation periods. Id. at 195 (quoting Larios v. Victory Carriers, Inc., 316 F.2d 63, 66 (2d Cir. 1963)). In considering maritime liens, it is well established that in New York, the relevant statute of limitations is twelve months, as provided in New York Lien Law § 83. Id. (citing N.Y. LIEN LAW § 83); The Owyhee, 66 F.2d 399, 400 (2d Cir. 1933); The Mendotta II, 13 F. Supp. 1019, 1020 (E.D.N.Y. 1935) (discussing N.Y. LIEN LAW § 83 and finding that the court can consider the law's statute of limitations when deciding whether a claim is barred by laches).

The Court again looks to Leopard Marine where, after finding that the district court had subject matter jurisdiction, the Second Circuit considered plaintiff's claim of laches. 896 F.3d at 194. There, the Court found that the plaintiff vessel owner was prejudiced when the lien holder, a fuel company that had provided fuel to the vessel when it was under the control of a third party, delayed action in seeking enforcement. Id. at 197-98. The Court discussed the impact the delay had on the owner's decision making and hypothesized how events may have unfolded differently

14

had enforcement efforts begun earlier. Id. at 197. Among other important facts, the lien holder had not begun enforcement efforts until after the third party, which had contracted for the purchase of fuel, declared bankruptcy. Id. at 198. Only then did the lien holder turn to the vessel owner for payment. Id. This also resulted in several missed opportunities to seize the vessel while the vessel's owner still could have sought indemnification from the third party responsible for the outstanding debt. Id. The Second Circuit found all of these factors supported the district court's finding that enforcement of the lien was barred by laches. Id. at 199.

      Here, assuming the truth of the allegations in the complaint, the future enforcement of the two preferred mortgage liens would be barred by laches. Defendant Royal failed to enforce its mortgages even though Venture did not remit payment for approximately 20 years. Compl. ¶ 28. This is far longer than the twelve-month statute of limitations governing the enforcement of liens on vessels in New York. See N.Y. LIEN LAW § 83. Defendant Royal had more than adequate opportunity to arrest the Vessel and seek enforcement because the Vessel was stored at plaintiff's marina for approximately nine years. Compl. ¶ 33. The Court hesitates to speculate about the consequences of defendant Royal's hypothetical action against the Vessel. However, it is obvious that had defendant Royal acted before plaintiff sought its own foreclosure, plaintiff would not now be saddled with the burden of seeking to extinguish the mortgages. Had defendant Royal acted expediently, plaintiff might not have provided necessaries to the Vessel, knowing future enforcement of a maritime lien would result in protracted litigation and be jeopardized by the existing preferred mortgages. Further, defendant Royal's mortgages have delayed plaintiff's efforts to register the Vessel with the Coast Guard for use in restricted trades. Id. ¶ 26. If the plaintiff had arrested the Vessel and complied with the notice requirements of the

Local Admiralty and Maritime Rules, these considerations would weigh in favor of granting plaintiff the relief requested and extinguishing the two outstanding preferred mortgage liens.

**II. Notice to Lien Holders**

Under Local Admiralty Rule C.3, "a party seeking a default judgment in an action in rem must satisfy the court that due notice of the action and arrest of the property has been given." The Rule requires that such notice be given:

> (1) By publication as required in Supplemental Rule C(4) and Local Admiralty Rule C.2;
> (2) By service upon the master or other person having custody of the property; and
> (3) By service under Federal Rule of Civil Procedure 5(b) upon every other person who has not appeared in the action and is known to have an interest in the property.

E.D.N.Y. LOCAL ADMIR. R. C.3(a). In addition, a plaintiff seeking default judgment must attempt to notify persons with recorded interests in the vessel, such as lien holders. See id. C.3(b)(1); see also PMJ Capital Corp. v. Lady Antoinette, No. 16-CV-6242(AJN)(SDA), 2020 WL 4740534, at *5 (S.D.N.Y. Feb. 19, 2020) Report and Recommendation adopted by 2020 WL 4735178 (S.D.N.Y. Aug. 14, 2020); J.P. Morgan Chase Bank N.A. v. M/Y Fortuna, No. 11-CV-2514(JS)(GRB), 2013 WL 1148920, at *5 (E.D.N.Y. Feb. 12, 2013) Report and Recommendation adopted by 2013 WL 1195420 (E.D.N.Y. Mar. 20, 2013). Supplemental Rule C(4) requires that plaintiff give detailed public notice of the action in a newspaper as directed by the Court. See J.P. Morgan Chase Bank N.A., 2013 WL 1148920, at *5. Local Admiralty Rule C.2 specifies additional information which must be included in the required public notice, including the nature of the action and a warning that claimants must file claims with the Clerk of Court within fourteen days of the notice's publication. See id. at *5-6 (citing E.D.N.Y. LOCAL ADMIR. R. C.2). Compliance with these requirements is necessary before a default judgment may

16

be entered. See id. at *6 (acknowledging compliance with the notice requirements and moving on to consider the merits of a claim under the Ship Mortgage Act).

Here, the docket does not reflect, and plaintiff has failed to otherwise demonstrate, that the requirements of the Supplemental Rules for Admiralty Claims or the Local Admiralty Rules were satisfied. Plaintiff's motion papers do contain an affirmation of service stating that the motion for a default judgment and affirmation in support were mailed to defendant Royal, the holder of the two preferred mortgages liens in issue. See ECF No. 7. This would appear to comply with the requirements of Federal Rule of Civil Procedure 5(b), which permits service of papers by mail, as mandated by the Local Admiralty Rules governing procedure in default judgment cases. E.D.N.Y. LOCAL ADMIR. R. C.3(a)(3). Importantly, the instant record does not reflect plaintiff's publication of notice of the action in the manner prescribed by the Local Admiralty Rules. See E.D.N.Y. LOCAL ADMIR. R. C.3(a)(1) (requiring publication of notice of an action when a party seeks default). Also, as discussed above – although not necessary for a default judgment in rem, but as required for an in personam judgment – the record is silent as to plaintiff's efforts to comply with New York's Limited Liability Law's service requirements to ensure proper service of the summons and complaint in this action on defendant Royal.

Although the Court has broad discretion to overlook a party's failure to comply with local rules, see Handy v City of New Rochelle, 198 F. Supp.3d 298, 301 (S.D.N.Y. 2016) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)), Courts typically ensure compliance with the notice requirements of the Local Admiralty Rules before granting a default judgment, see, e.g., PMJ Capital Corp., 2020 WL 4740534, at *5; J.P. Morgan Chase Bank N.A., 2013 WL 1148920, at *5. This practice is well advised because, as the Supreme Court has recognized, "the requirement that parties be notified of proceedings affecting their legally protected interests is

17

obviously a vital corollary to one of the most fundamental requisites of due process – the right to be heard." Schroeder v. City of New York, 371 U.S. 208, 212 (1962).

On the facts of this case, where defendant Royal is a limited liability company which has been administratively cancelled, see ECF No. 11-2, compliance with the notice requirements of the Local Admiralty Rules are of paramount importance.[12] Plaintiff has not only failed to serve all of the members of the LLC, but has failed to publish notice of the action. This failure only compounds plaintiff's other errors herein: plaintiff's decision to proceed initially in state court as well as plaintiff's failure to arrest the Vessel. Accordingly, I recommend that the Court should deny plaintiff's motion for a default judgment without prejudice. Plaintiff may file a new motion for a default judgment upon full compliance with the notice requirements of both the Supplemental Federal Rules for Admiralty or Maritime Claims and the Local Admiralty and Maritime Rules.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion for a default judgment should be denied without prejudice. Plaintiff must secure the Vessel's arrest and demonstrate full compliance with the notice requirements contained in the Supplemental Federal Rules for Admiralty or Maritime Claims and the Local Admiralty and Maritime Rules before refiling its motion seeking a default judgment.

---

[12] Limited liability companies in some jurisdictions cannot be sued once they have been cancelled. See, e.g. Soroff Trading Dev. Co., Ltd. v. GE Fuel Cell Sys, LLC, 842 F. Supp. 2d 502, 520 (S.D.N.Y. 2012) (stating that in Delaware, an LLC cannot be sued once its certificate of cancellation has been filed).

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                          /S/
                                      LOIS BLOOM
                                      United States Magistrate Judge

Dated: February 23, 2021
         Brooklyn, New York